IN THE COURT OF COMMON PLEAS OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| NUCAR CONNECTION, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 2002-08-521 |
| v. | ) | |
| | ) | |
| ALICE A. HOWELL and | ) | |
| BURL A. HOWELL, | ) | |
| | ) | |
| Defendants | ) | |

### ANSWER TO SECOND AMENDED COMPLAINT

1.  Admitted.

2.  Admitted.

3.  Admitted that Howell gave NuCar permission to determine the amount of the payoff of her vehicle. Denied that the values of the Mustang and the F150 were less than the amounts due FMCC resulting in the condition of negative equity. As the sales contract prepared by NuCar Connection clearly shows, the trade-in value was equal to the lien pay-off value.

4.  Denied as written. Howell did agree to purchase the Corvette subject to the approval of financing. Denied that there was any negative equity. Denied that Howell completed credit applications. Howell did sign one credit document after it had been completed by the dealership personnel.

5.  Admitted.

6.  Admitted.

7.  Denied as written. Howell is not aware of any bank or finance company to whom NuCar applied for credit on her behalf other than Wilmington Trust Company. Admitted that

PC: Client

Wilmington Trust Company was willing to finance the sale of the Corvette under certain conditions.

8. Denied as written. Howell is not aware of any rejection of financing for her Corvette other than that of Wilmington Trust Company. It is admitted that Howell was told by the dealership personnel that she would have to pay $14,00.00 down payment.

9. Denied as written. Howell was not shown alternative financing arrangements by dealership personnel. She was told that she had to pay $14,000.00 as a down payment and when she protested that she did not have that cash currently in her account, she was told that she could pay with checks that would be deposited at a later date. She gave the dealership one check for $10,000.00 that was to be held until Friday, April 19, 2002, and a second check for $4,000.00 that was to be held until two weeks later. The original contract that she had signed was subsequently shredded in her presence, and she was instructed to sign a new blank sales agreement which was then completed by the dealership personnel. Once the second contract was signed, NuCar had no legal right to retain Howell's checks totaling $14,000.00.

10. Howell does not have sufficient knowledge of the conduct of NuCar to know when it contracted to re-sell the Ford Mustang. Therefore, she can neither admit nor deny this paragraph.

11. Howell does not have sufficient knowledge of the facts concerning when NuCar paid off Ford Motor Credit Company for her truck and Mustang. Therefore, she can neither admit or deny this paragraph.

12. Admitted. However, Howell also was concerned because she was beginning to realize that NuCar was keeping money of hers to which it was not legally entitled.

13. Denied as written. NuCar apparently claimed that it had sold the Mustang by the 17th, but also claimed that the truck was being used as a demo vehicle for the dealership. Furthermore, no dealership personnel claimed that Ford Motor Credit Company had been paid back until on or about the 22nd of April, 2002. It is admitted that on April 17, 2002 Howell told Dennis Davenport, sales manager at NuCar Chevrolet that she was going to stop payment on her checks. Dennis Davenport then threatened Howell that he would have her arrested for passing bad checks.

14. Denied as written. As of April 18, 2002, Howell had stopped payment on the checks totaling $14,000.00. By way of a check dated April 26, 2002, Howell paid NuCar $2,279.00 which is the cash down payment figure listed on the sales contract for the Corvette. The check was cashed and the money retained by NuCar Chevrolet. The memo on the check was "down payment on 2002 V06 Corvette."

15. Defendant realleges her answers to paragraphs 1 through 14 as if fully restated herein.

16. Denied.

17. Defendant realleges her answers to paragraphs 1 through 16 as if fully restated herein.

18. Denied.

19. Defendant realleges her answers to paragraphs 1 through 18 as if fully restated herein.

20. Denied.

21. Denied.

22. Denied.

23. Denied.

24. Defendant realleges her answers to paragraphs 1 through 23 as if fully restated herein.

25. Denied.

26. Denied.

## AFFIRMATIVE DEFENSES

### AFFIRMATIVE DEFENSE 1

Plaintiff's complaint fails to state a claim upon which relief can be granted.

### AFFIRMATIVE DEFENSE 2

Plaintiff's complaint is barred by the doctrine of accord and satisfaction.

### AFFIRMATIVE DEFENSE 3

Plaintiff's claims are barred by the doctrine of novation.

### AFFIRMATIVE DEFENSE 4

Plaintiff is barred from recovering any damages from defendant by its own fraud and unclean hands.

### AFFIRMATIVE DEFENSE 5

NuCar has intentionally violated 5 Del. C. §2907 and is subject to penalties pursuant to 5 Del. C. §2911(b).

### AFFIRMATIVE DEFENSE 6

Counts III and IV of Plaintiff's Second Amended Complaint are made in bad faith and solely to harass and annoy defendant.

## AFFIRMATIVE DEFENSE 7

The contract between plaintiff and defendant upon which plaintiff is suing contains clear and unambiguous language, and Delaware law precludes the use of extrinsic evidence to interpret that clear and unambiguous language. E.I. Du Pont De Nemours v. Admiral Ins., Del. Super., 711 A.2d 45 (1995).

## AFFIRMATIVE DEFENSE 8

Plaintiff's claim of libel or defamation is barred by defendants' absolute and/or conditional immunity.

## AFFIRMATIVE DEFENSE 9

To the extent permitted by law, defendants plead as an offset, the damages due them from the Fair Debt Collection Practices Act Violations of Douglass Shachtman, Attorney for Plaintiff, which occurred while he was attempting to collect a debt for Plaintiff.

## AFFIRMATIVE DEFENSE 10

The allegations in Plaintiff's Count IV are barred from evidence in this case by D.U.R.E. 404 and D.U.R.E. 608.

**WHEREFORE**, defendants demand judgment against NuCar on all claims of NuCar, and further that defendants be awarded attorney fees, costs of the action, and such other relief as the court deems appropriate.

Grady & Hampton, P.A.

Stephen A. Hampton, Esquire
6 North Bradford Street
Dover, Delaware 19904
(302) 678-1265
Attorney for Defendant

DATED: 5/20/03